IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LIBERTARIAN PARTY OF OHIO, et al.,** | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:19-cv-2501 |
| | : | |
| v. | : | Judge Algenon Marbley |
| | : | |
| **DEGEE WILHEM, et al.,** | : | |
| | : | |
| Defendants. | : | |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant Commission Members filed a motion to dismiss because this Court lacks personal jurisdiction based on Plaintiffs' failure to properly serve the Commission Members, Plaintiffs lack standing, this Court should abstain pursuant to *Burford*, and Plaintiffs have failed to state a claim for relief. And nothing in Plaintiffs' response in opposition changes the conclusion that this Court should dismiss Plaintiffs' complaint in its entirety.

The central point of Plaintiffs' complaint is that they wanted certain groups prosecuted by the Commission Members for alleged violations of Ohio's election law. The Commission Members disagreed and found that there was no probable cause.[1] Because the Plaintiffs were unsuccessful in having third parties prosecuted, they now seek to have this Court act as an

---

[1] Contrary to Plaintiffs' position that the Commission Members do not challenge whether there were violations of Ohio law, *see* Pls. Resp., doc. 11, at 11-12, the Commission Members' position continues to be that there was no probable cause for a violation. Whether a violation had occurred is a matter of law that this Court need not accept as true, contrary to Plaintiffs' assertions. However, this Court need not and should not delve into the nuances of Ohio election law to determine whether the groups violated the law. That was the task of the Commission Members, and they already have made that determination.

appellate court over the decisions of the Commission Members.  But just as this Court cannot proceed as an appellate court for state-court decisions, this Court should not act as an appellate court over state-administrative decisions.  And therefore, this Court should dismiss Plaintiffs' claims.

Furthermore, this Court should not convert the Commission Members' motion to dismiss into a motion for summary judgment.  Only when the *motion to dismiss* presents matters outside of the pleadings can a court convert the motion into one for summary judgment. Fed. R. Civ. P. 12(d).  The Commission Members' motion was not responsive to Plaintiffs' motion for summary judgment and did not cite to their motion or even address the arguments contained therein.  *See generally* doc. 7.  Instead, on the same day, the Commission Members sought to stay briefing on that motion for summary judgment, which this Court granted.  While Plaintiffs may have strayed from the pleadings, the Commission Members' motion to dismiss is entirely based on Plaintiffs' complaint; and therefore, there is no reason to convert their motion.

**A.     This Court Does Not Have Personal Jurisdiction over the Commission Members.**

The burden is on the Plaintiffs to prove that this Court has personal jurisdiction.  *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014).  Yet, they have failed.

Part of personal jurisdiction is proper service on the defendants.  *Amen v. Dearborn*, 532 F.2d 554, 557 (6th Cir. 1976) (quotation omitted); *see also Boulger v. Woods*, 917 F.3d 471, 476 (6th Cir. 2019) ("In the absence of proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." (quotation omitted)).  Due process even requires proper service.  *Amen*, 532 F.2d at 557.  Proper service on individual defendants is accomplished pursuant to Rule 4(e), which allows service by (1) following state law for serving summons, (2) delivering a copy to the individual personally, (3) leaving a copy at

the individual's dwelling or usual place of abode, and (4) delivering a copy to an agent authorized by appointment or by law to receive service. *Id.*

Plaintiffs admit that they did not serve the Commission Members pursuant to that rule, and they do not even allege or argue that the Attorney General is an agent authorized to receive service. *See* doc. 11 at 4-6. Rather, they attempted to use Rule 4(j)—service for the state. This is improper. First, the Sixth Circuit already determined that defendants, sued in either their individual or official capacities, must be served as an individual. *Amen*, 532 F.2d at 557. Plaintiffs are wrong in arguing that *Amen* permits service on the state for official capacity suits. The only service discussed in *Amen* is individual service. The Court noted that service must be proper even for official capacity cases. *Id.* There the only individuals served were secretary to the city clerk and the city director of elections. *Id.* Because the individuals sued in their official capacity were not served in person, at their residence, or through an authorized agent—all individual service methods—proper service had not been effected. *Id.* This is in contrast to the Court's conclusion that the plaintiffs properly served the city because service on the clerk's office was sufficient under state law. *Id.* at 558. If the Court's decision had been as Plaintiffs' claim—that service just has to occur on officials and need not be individual service—then service on the clerk's office also would have sufficed for the individual defendants. It did not however because individual service is in fact a requirement when an individual is a defendant, whether in their official or individual capacities.

Furthermore, Plaintiffs' argument that service was proper because suing the Commission Members in their official capacity means that they are suing the State also is unavailing. In *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 72 (1989), the Supreme Court held that, for purposes of § 1983, individuals sued in their official capacities were not "persons" under the

statute. Rather, those officials were the state itself. *Id.* If this was the end of the analysis, Plaintiffs might win on their personal jurisdiction claim, but the rest of their complaint, which is based on § 1983, would be easily dismissed. The Commission Members would be the state, so service on the Attorney General would be proper, but as the state, they would not be persons under § 1983, so Plaintiffs cannot bring their claims. As great as that would be for the Commission Members, the Supreme Court said more. The Court specifically said that when those officials are sued for injunctive relief they are persons because "official-capacity actions for prospective relief *are not* treated as actions against the state." *Id.* Thus, as Plaintiffs' complaint is an attempt at an injunction for prospective relief, the Commission Members are not the state, and therefore, cannot be served as the state.

Looking into the exception that allows Plaintiffs' to bring their claims in the first place is instructive. Plaintiffs rely on the *Ex parte Young* exception to Eleventh Amendment immunity. Compl. at 1. For this exception, the official is "stripped of his official or representative character and is subjected *in his person* to the consequences of his individual conduct." *Ex parte Young*, 209 U.S. 123, 160 (1908) (emphasis added). Likewise, the Sixth Circuit has held that "a state official sued in his official capacity for prospective equitable relief is generally not regarded as the state for purposes of the Eleventh Amendment and the case may proceed in federal court." *MacDonald v. Village of Northport*, 164 F.3d 964, 970 (6th Cir. 1999). If the Commission Members were truly the "State," then not only would they not be persons under § 1983, they also are immune from suit under the Eleventh Amendment. Again, this would be great for the Commission Members—this Court would have personal jurisdiction but clearly not subject matter jurisdiction. Alas, it is not so. For the purposes of this case, the Commission Members,

4

even in their official capacity, are individuals (and therefore persons and not granted immunity), but also they must be served as individuals.  Plaintiffs did not do so.

Lastly, Plaintiffs reliance on other district court decisions is unavailing.  Importantly, none of those decisions are from the Sixth Circuit, doc. 11 at 4-5, which is not surprising as the Sixth Circuit already has said service must be made on the individual not the state.  Therefore, this Court is not bound by those decisions.  *Peters v. Univ. of Cincinnati College of Med.*, 2012 U.S. Dist. LEXIS 126426 (S.D. Ohio Sept 6, 2012) (noting that a prior district court decision had "no precedential value" and that the court was "not bound by its holding or rationale" as district courts are "not bound by another district court's decision, or even an opinion by another judge of the same district court" (quotation omitted)).  Because those other district court's decisions did not consider the interplay between official-capacity suits and the Eleventh Amendment or the definition of a person, this Court should not follow their holdings.

Rather, this Court should follow the Sixth Circuit's guidance and find that service on the individual was required.  Because Plaintiffs did not individually serve the Commission Members, this Court does not have jurisdiction and should dismiss this complaint.

\* \* \*

To the extent that this Court disagrees (or that it finds the service issue not yet ripe given that Plaintiffs have 120 days to perfect service), this Court should dismiss for the following other reasons.

**B.     Plaintiffs Lack Standing to Bring Their Selective Enforcement Claims**

Standing is a "threshold question in every federal case," and "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Swetic Chiropractic & Rehab. Ctr., Inc. v. Foot Leverlers, Inc.*, 235 F. Supp.3d 882, 886 (S.D. Ohio 2017).  To establish constitutional standing, Plaintiffs must show that: (1) they

have suffered "a concrete and particularized injury," whether actual or imminent; (2) the injury is traceable to the defendant; and (3) a favorable judgment will provide redress. *Morrison v. Bd. of Educ.*, 521 F.3d 602, 608 (6th Cir. 2008). Similar to personal jurisdiction, Plaintiffs have the burden to show that they have standing to bring their claims. *Id.* Plaintiffs have failed in relation to their selective enforcement claims (Counts 2 and 3).

And nothing in Plaintiffs' response in opposition suggests otherwise. Plaintiffs allege two injuries associated with their selective enforcement claims: (1) the gubernatorial debates illegally excluded the Plaintiffs and (2) the Commission Members did not enforce Ohio's law regarding those debates. Doc. 11 at 13. The first alleged injury is not traceable to the Commission Members, as they took no part in organizing, establishing, or conducting the gubernatorial debates. *See generally* Compl. The second alleged injury—the failure to prosecute another—is not actionable. As previously noted, the Supreme Court has consistently held that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973). Plaintiffs do not have a "judicially cognizable interest in the prosecution or nonprosecution of another." *Id.* Even when the plaintiff is the victim of a crime, they still lack standing "to bring a § 1983 action based upon the lack of prosecution of others." *Stiltner v. Donini*, 2019 U.S. Dist. LEXIS 72032, at *6 (S.D. Ohio Apr. 1, 2019); *see also Runyon v. Glynn*, 2002 U.S. Dist. LEXIS 18554, at *41 (W.D. Mich. May 6, 2002) ("Simply put, members of the general public (even if they claim to be witnesses or victims to a crime) lack standing to enforce the criminal laws or to seek a judicial order compelling initiation of a criminal prosecution.").

In an attempt to avoid the obvious result that they lack standing, Plaintiffs cite to one Supreme Court case and a number of cases from other circuits relating to police protection. Doc.

6

6 at 16-17 (incorporated by reference in doc. 11 at 12).  However, these cases do not support a finding of standing.  First, neither the Supreme Court case nor any of the circuit court cases even discuss standing; and therefore, offer little, if any, support to Plaintiffs' claim of standing.  *See generally DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189 (1989); *Elliot-Park v. Manglona*, 592 F.3d 1003 (9th Cir. 2010); *Hilton v. City of Wheeling*, 209 F.3d 1005 (7th Cir. 2000); *Estate of Macias v. Ihde*, 219 F.3d 1018 (9th Cir. 2000); *Mody v. City of Hoboken*, 959 F.2d 461 (3d Cir. 1992); *Watson v. Kansas City*, 857 F.2d 690 (10th Cir. 1988).  Whereas, *Linda R. S.* was directly related to standing with the Court specifically finding that an individual did not have standing to contest the prosecuting decisions of others when that person is not prosecuted or threatened with prosecution.  410 U.S. at 619.  Plaintiffs make no claims that the Commission Members prosecuted them or threatened to prosecute them.  *See generally* Compl.

Second, all but one case details specific injuries that resulted from the alleged denial of police protection.  *See Deshaney*, 489 U.S. at 191 (child beaten and permanently injured); *Hilton*, 209 F.3d at 1006 (issued multiple citations); *Macias*, 219 F.3d at 1026 (death); *Mody*, 959 F.2d at 462 (death); *Watson*, 857 F.2d at 693 (raped, beaten, and stabbed); *Burnett v. Springfield Township*, 2014 U.S. Dist. LEXIS 92216, at *3 (financial loss in excess of $16,000).  Plaintiffs have no such allegations against the Commission Members.  *See generally* Compl.  Their sole allegation is that the Commission Members did not find probable cause and prosecute the groups and individuals involved in the gubernatorial debates.  Doc. 11 at 13.  Under *Linda R.S.*, that allegation is wholly insufficient to establish standing for selective enforcement claims.

Lastly, Plaintiffs citation to *La Botz v. Fed. Election Comm.*, 889 F. Supp.2d 51 (D.D.C. 2012) is inapposite.  *La Botz* involved the alleged violation of federal law and the Federal Election Commission's determination whether a violation had occurred.  There, the FEC found

7

that there was no violation, and the complainant appealed to the district court. *Id.* at 55. While the district court found that an allegation of exclusion from a debate in violation of federal law was sufficient to establish standing, *id.* at 56-57, there is an important difference. Federal law specifically provides that any party aggrieved by an order of the FEC may file a petition with the District Court for the District of Columbia. 52 U.S.C. § 30109. Thus, federal law provides for an appeal of the FEC's decision to the district court. The same is not true here. No statute—state or federal—gives this Court appellate jurisdiction over the decisions of the Ohio Elections Commission. Plaintiffs may pursue their state-court appeal, and the state court can determine, under Ohio law, whether Plaintiffs have standing to challenge the Commission's decision and if so, whether that decision was correct. Plaintiffs, however, have no standing to ask this Court to make those decisions.

Because Plaintiffs have no legally cognizable interest in the prosecution of others, they do not have standing to raise their selective enforcement/nonenforcement claims. Accordingly, this Court should dismiss those claims for want of jurisdiction.

C. **This Court Should Also Abstain from Exercising Jurisdiction Pursuant to *Burford v. Sun Oil Co., Inc.***

As an initial matter, Plaintiffs are incorrect that *Burford* does not direct dismissal but only a stay in the federal proceedings. To see why it is incorrect, this Court needs to look no further than *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), itself. In *Burford*, the Sun Oil Company attacked the validity of an order of the Texas Railroad Commission granting Burford a permit to drill oil wells on a small plot of land. 319 U.S. at 316. However, when Sun Oil brought a claim in federal court against the Railroad Commission, the Supreme Court held that the district court correctly *dismissed* its complaint because the state court's judicial review of the Commission's decisions was adequate. *Id.* at 334. The Sixth Circuit has also directed dismissal in cases

8

involving *Burford* abstention. *See Ada-Cascade Watch Co v. Cascade Resource Recovery, Inc.*, 720 F.2d 897, 906 (6th Cir. 1983) (abstaining from deciding the issues presented by the appellants and remanding to the district court with instructions to dismiss the action); *MacDonald v. Village of Northport*, 164 F.3d 964, 973 (6th Cir. 1999) (concluding that *Burford* abstention and the Eleventh Amendment created "grounds together" to dismiss the case). Accordingly, contrary to Plaintiffs' argument, *Burford* abstention is grounds for dismissal of a case in federal court.

The remaining arguments—that (1) *Burford* abstention does not apply to First Amendment challenges, and (2) Plaintiffs' case does not implicate important matters of Ohio law—also fail.

### 1. Plaintiffs' claims that *Burford* does not apply to First Amendment challenges is wholly inaccurate.

Plaintiffs go to great lengths in their response to argue that *Burford* abstention does not apply in cases involving the First Amendment.  These efforts are futile and filled with many inaccuracies.  First, Plaintiffs claim that *Burford* abstention has *never* been applied by any court in a case raising a *facial* First Amendment challenge.  Doc. 11 at p. 7.  And Plaintiffs characterize their challenge as a facial challenge.  *Id.* at p. 10.  It appears that Plaintiffs have misunderstood the scope of the Commission Members' *Burford* claim—the Commission Members have only raised *Burford* abstention relating to Plaintiffs' second and third counts, not to count one.  *See* doc. 7 at 14.  Plaintiffs makes clear that their First Amendment challenge in count two is *as-applied*, not *facial* (count three is an equal protection claim).  *See* Compl. at 50 (noting in its heading that count two is "as-applied First Amendment challenge").  Accordingly, Plaintiffs' arguments regarding the applicability of *Burford* to facial First Amendment challenges is unavailing.

9

Second, courts have indeed applied *Burford* in the First Amendment context. In *Ohio ex rel. Armstrong v. Stow-Munroe Falls CSD Bd. of Educ.*, 2013 U.S. Dist. LEXIS 137809 (N.D. Ohio Sept. 25, 2013), the plaintiff, a member of the Stow-Munroe Falls Board of Education, brought suit against the Board and five of its members alleging numerous state law violations involving Ohio's Open Meetings Act, defamation, and improper reprimand, as well as a claim that the defendants had violated the plaintiff's First Amendment right to free speech. *Id.* at *5. However, the Northern District determined that *Burford* abstention was appropriate in that instance because "whether plaintiff, as an elected public official in Ohio entitled to attend executive sessions of the Board that are not open to the public, is permitted, under the guise of 'free speech,' to disclose confidential information learned during those executive sessions is a question so closely aligned to the issues raised in state law claims that it should also be answered by a state court." *Id.* at *11. The court specifically noted that "this is a situation where federal abstention with respect to the First Amendment claim is appropriate." *Id.* The court determined that it was for a state court to determine the interplay between the parties' different obligations. *Id.* at *13-14. Likewise, it is for Ohio officials to determine whether the groups associated with the gubernatorial debates violated *Ohio* election law—not this Court.

Third, Plaintiffs fail to distinguish between cases that challenge statutes or regulations themselves and cases that challenge the outcome of an administrative appeal. Plaintiffs cite a number of cases that raise some questions as to whether *Burford* abstention can be raised in the First Amendment context, doc. 11 at 8, but these cases are inapposite as they relate to challenging statutes not administrative actions.

For example, in *Felmeister v. Office of Attorney Ethic, Div. of N.J. Admin. Office of Courts*, 856 F.2d 529, 530 (3d Cir. 1988), the Third Circuit declined to apply *Burford* when

10

plaintiffs brought a First Amendment challenge to an attorney advertising rule *itself*. Likewise, in *Boegart v. Land*, 675 F. Supp.2d 742, 744 (W.D. Mich. 2009), the plaintiff's claim centered on a First Amendment challenge to a specific statute—namely Mich. Comp. Laws § 168.957. These cases are in contrast to cases involving a challenge to the outcome of administrative or executive proceedings, like in *Armstrong* or in the case at bar, where courts do consider that *Burford* abstention is appropriate.

Fourth, nothing in *Habich v. City of Deaborn*, 331 F.3d 524 (6th Cir. 2003), requires a different result. In fact, *Habich* supports a finding that *Burford* abstention applies. While the Sixth Circuit declined to apply *Burford*, its main reason for doing so was that the plaintiff's federal claim "had *no* relationship to the state proceedings." *Id.* at 533. The state and federal courts were considering completely separate issues, so there was no concern that the federal court would interfere with the proceedings or orders of the state administrative agencies. *Id.* at 532-33. Not so here. Counts two and three directly related to the Commission's administrative determinations and involve the same issues that are being appealed to the state court. Plaintiffs even seek an order overturning the Commission's determination and a remand back to the Commission to reconsider its order. If that is not interference in the proceedings and orders of a state administrative agency, what would be? As a result, *Burford* abstention is warranted in the present action.

> 2. **Plaintiffs' case does implicate a statewide administrative scheme and involves difficult questions of state law.**

This Court should grant the Commission Members' motion to dismiss because the current action is truly entangled in state law. The Commission Members would agree that, if the federal claim has no relation to the state law issue, then *Burford* abstention is unlikely to apply. Indeed, the Sixth Circuit has held that *Burford* abstention does not apply when allegations "derive *solely*

11

from federal law and *do not involve* a state law issue that is *entangled* in a skein of state law." *Devlin v. Kalm*, 493 F. App'x 678, 683 (6th Cir. 2012) (emphasis added) (quotation omitted). But Plaintiffs complaint makes abundantly clear that their selective enforcement claims are "entangled in a skein of state law."

For example, Plaintiffs spend fourteen pages of their complaint detailing Ohio law and attempting to explain why the gubernatorial debates violated that law. *See* Compl ¶¶ 99-176. Furthermore, the alleged state-law violations are intertwined with Plaintiffs' claims of political animus. *Id.* ¶¶ 207-16. Indeed, Plaintiffs attempt to infer political animus precisely because the Commission Members did not agree with the Plaintiffs' interpretation of Ohio law. *Id.* There is no other "evidence" of animus (and that is because such animus does not actually exist). Thus, if this Court denies the motion to dismiss and proceeds to consider the full merits of Plaintiffs' claims, the selective enforcement claims are not *solely*, or even primarily, derived from federal law, but are entangled issues related to state law. And these are not necessarily easy issues of state law either—as there is no prior precedent and there is clearly a disagreement regarding how Ohio law applies.

Furthermore, unlike in *Devlin*, Ohio's courts have considered First Amendment issues related to the Ohio Elections Commission. Specifically, in *Magda v. Ohio Elections Comm'n*, 10th Dist. Franklin No. 14AP-929, 2016-Ohio-5043, the Commission Members had found that Magda had violated R.C. 3517.21(B)(1) for making false statements on campaign materials. *Id.* at ¶ 2. Magda filed an appeal in the Franklin County Court of Common Pleas and raised First Amendment challenges to the statute. While the common pleas court rejected Magda's challenge, the Tenth District held that R.C. 3517.21(B)(1) violated the First Amendment and was therefore unconstitutional on its face. *Id.* at ¶¶ 7, 37. Accordingly, any fear that Ohio courts are

unable to properly handle First Amendment challenges involving administrative decisions is unwarranted.

Because counts two and three involve difficult questions of state law and would be disruptive of Ohio's efforts to have a coherent policy, *Burford* abstention applies.  This Court should decline to be an appellate court for the Ohio Elections Commission.  Indeed, if this Court started to involve itself in the Commission's decisions and granted Plaintiffs' request for essentially a remand back to the Commission, it is not hard to imagine that many more people who disagree with the Commission's decision will fly inappropriately to federal court for redress.  This is the precise outcome that *Burford* means to avoid.  There is an appropriate state appellate procedure that aggrieved parties can use to challenge final decisions of the Commission—that procedure does not involve an appeal to federal court.  For these reasons, this Court should abstain from considering Plaintiffs' second and third counts and dismiss them from the complaint.

**D.      Plaintiffs Also Fail to State Any Viable Constitutional Claim.**

As argued in the motion to dismiss, Plaintiffs have not and cannot state a constitutional violation for any of their claims.  And nothing in their response in opposition warrants a different conclusion.

**1.      The Commission's bipartisan membership complies with the First Amendment.**

In responding to the motion to dismiss, Plaintiffs rely almost exclusively on a Third Circuit case involving state-court judges and claim that the Commission Members are like judges because they are not policymakers.  *See* doc. 6 at 6-12 (incorporated by reference in doc. 11). However, Plaintiffs ignore that the Supreme Court already has determined that party affiliation is an "acceptable requirement" for some positions.  *Branti v. Finkel*, 445 U.S. 507, 517 (1980).

Indeed, "[u]nder some circumstances, a position may be appropriately considered political even though it is *neither confidential nor policymaking* in character." *Id.* at 518. One "*obvious example*" of such circumstance is when "a State's election laws require that precincts be supervised by two election judges of different parties." *Id.* (emphasis added). While precinct officials do not engage in policy decisions, "party membership [is] essential to the discharge" of their duties. *Id.*

Following *Branti*, the Sixth Circuit has recognized four categories of positions in which political affiliation can be considered. *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996). While three of the four categories have some measure of policymaking authority, the fourth category does not. *Id.* The fourth category allows positions to be filled based on party affiliation in order to "balance[e] out political party representation." *Id.* Specifically, that balance can be one Democrat and one Republican—the Court did not require representation from the minor parties. *Id.* at 1557 n.33. The Commission follows this formula. It has three members from each of Ohio's two major political parties and one unaffiliated member. Ohio Rev. Code § 3517.152(A). The Commission consists of election officials—their sole jurisdiction involves violations of certain Ohio election laws. Any comparison to presidential or gubernatorial cabinet positions is inapposite. Both the Supreme Court and the Sixth Circuit have held that election positions are different, and therefore, can be treated different by requiring a balance of party affiliation. And Plaintiffs suggestion that there is no authority to support the Commission's membership completely ignores both *Branti* and *McCloud*.

Plaintiffs reliance on *Adams v. Governor*, 914 F.3d 827 (3d Cir. 2019) also fails, as it provides an inapt comparison between judges and the Commission. Unlike judges, the Commission Members perform a largely executive role. *Billis v. Ohio Elections Comm'n.*, 766

14

N.E.2d 198, 199-200 (Ohio Ct. App. 2001). This distinction is important, as the Third Circuit distinguished judges from "multimember deliberative bodies" that did not have "purely judicial functions." *Adams*, 914 F.3d at 842. While the Commission may at times take on a quasi-judicial role, it is not "purely judicial" in contrast to state-court judges. Indeed, many of their functions are executive and investigatory in nature rather than judicial. *See Billis*, 766 N.E.2d at 199-200.

Furthermore, the need to balance partisanship is readily apparent for the Commission unlike for judges where the primary concern is "the impartiality of individual" judges. *Adams*, 914 F.3d at 843. The Commission's review is also narrowly confined to election conduct. *See* Ohio Rev. Code § 3517.154. In this context, where claims of partisanship are easy to predict, Ohio has a heightened interest in ensuring the Commission is actually politically balanced.

And Ohio is not alone in seeking to achieve political balance for its election positions. Many (likely most) States require balance between the two major parties when filling election-supervision positions. *See, e.g.*, Ind. Code § 3-6-4.1-2 ("Each member of the commission must be a member of a major political party of the state."); Ken. Rev. Stat. § 117.015; Mich. Comp. Laws § 168.22a; Tenn. Code § 2-11-101; *cf. Vintson v. Anton*, 786 F.2d 1023, 1025 (11th Cir. 1986) (noting most States "follow the practice of requiring bipartisanship" for "election boards"). And Plaintiffs cannot identify an alternative that equally serves Ohio's interests. Both capping the number of members from any single party and allowing minor parties to have the unaffiliated seat raise the same balancing problems. This is because minor parties often have stronger ties to one of the major parties. Imagine, for instance, how a Commission with three Republican members, two Libertarian Party members, and only two Democratic members would appear to an accused Democratic candidate. Or consider the

15

appearance of a Commission with a majority of Democratic and Green Party members to an accused Republican. Put differently, to protect impartiality and its appearance, the Commission's bipartisan balance reflects the reality that two parties predominate in Ohio. And there is nothing wrong in recognizing this reality. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 367 (1997) (noting that states may "enact reasonable election regulations that may, in practice, favor the traditional two-party system").

Because binding precedent holds that election positions may be filled based on party affiliation (and limited to the two major parties), the membership of the Ohio Elections Commission does not violate the First Amendment. And therefore, Plaintiffs have not and cannot state a claim for relief.

    **2.**    **Plaintiffs' selective-enforcement claims also fail.**

Plaintiffs' selective enforcement (or non-enforcement) claims fail as well. First, as previously noted, Plaintiffs have not been injured by the Commission Members' decision finding no probable cause of a violation related to the gubernatorial debates. But even if they had standing, their claims fail because there has been no *selective* enforcement or even non-enforcement. While a constitutional claim may lie for *selective treatment*—different treatment from others—as to the enforcement of laws or the provision of services, a plaintiff must allege "that a *selection* has taken place." *See United States v. Armstrong*, 517 U.S. 456, 469 (1996) (emphasis added) (quotation omitted). Without unequal treatment, a "failure to prosecute other offenders" is not actionable. *Latrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999) (holding a plaintiff's claim that it was "treated selectively" failed absent a showing that the village "knew of other violations, but declined to prosecute them"). Thus, selective enforcement "requires" claimants to show that they were "single[d] out" in comparison to others "in similar situations." *Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 394 (6th Cir. 2016).

Plaintiffs' claim that they do not need to show an actual selection is without merit. First, the cases relied upon by Plaintiffs' are related to unequal policing, not selective prosecution. And Plaintiffs' claims are about prosecution. For example, Plaintiffs' complaints are not that the Commission Members ignored their complaint; rather, the Plaintiffs acknowledge that the Commission held a hearing and heard arguments from all parties. Compl. ¶¶ 190-205. Plaintiffs' complaint is that the Commission Members did not agree with Plaintiffs' that violations of Ohio's law had occurred and that the Commission Members did not take further action against the other parties—*i.e.*, the Commission Members did not commence with prosecuting Plaintiffs' complaints. It is essentially the same as a victim of a crime filing a complaint with a prosecutor's office, that office investigating the complaint, and then determining that probable cause did not exist to pursue charges, and then the victim subsequently attempting to appeal the prosecutor's determination, arguing that their complaint was not investigated. Here, the Commission Members seriously considered the argument presented to them, but after considering those arguments, determined that there was not a sufficient showing of probable cause to pursue the complaint. Plaintiffs attempt to appeal that decision to this Court is inappropriate and unwarranted.

Because Plaintiffs' complaint raised selective prosecution claims, they must show that they were treated differently than others. As noted in *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d 2001)—a case relied on by Plaintiffs—"a plaintiff alleging a claim of selective *prosecution* in violation of the Equal Protection Clause must plead and establish the existence of similarly situated individuals." The comparator is required "because courts grant special deference to the executive branch in the performance of the 'core' executive function of deciding whether to prosecute." *Id.* (citing *Armstrong*, 517. U.S. at 465). The Commission Members are part of the

17

executive branch, and one of their core functions is deciding whether to prosecute complaints—their first step is making a probable cause determination. Their decision gets special deference; and therefore, Plaintiffs must establish the existence of similarly situated individuals. They have not, so they have failed to state a claim.

And even in selective policing cases, some form of *selection* is needed, which is seen through the cases cited by Plaintiffs. The Seventh Circuit noted that the claim required "singling . . . out for unfavorable treatment." *Del Marcelle v. Brown County*, 680 F.3d 887, 889 (7th Cir. 2012). Singling out implies that there has been a selection of some sort. In *United States v. Avery*, 137 F.3d 343, 348 (6th Cir. 1995), the criminal defendant alleged that he was singled out because of his race, and he even put forward evidence that African Americans were stopped more "than any other group." The comparison was implicit in his claim—he was stopped because he was African American while people of other races were not stooped—and he supported this claim with evidence.

Likewise, in *Ryan v. City of Detroit*, 698 F. App'x 272, 282 (6th Cir. 2017), the Sixth Circuit held that the "total lack of comparators" was "fatal" to the plaintiff's case. There, the Court determined that the plaintiff had not provided any evidence that similarly-situated individuals were treated different, which was a "threshold matter." *Id.* at 279. And even though officers deviated from city policy, there was no evidence that showed "disparate treatment." *Id.* at 282. Here, there is also a total lack of comparators. Also the same is a lack of any evidence showing disparate treatment. The only "evidence" from Plaintiffs is that the Commission Members disagreed with their in-house counsel. But if failing to follow city policy does not show disparate treatment, then disagreeing with counsel does not show disparate treatment. At bottom, *nothing* supports Plaintiffs' selective enforcement claims, as they can point to *neither*

comparators *nor* evidence of disparate treatment.  They fail to plead any unequal treatment on the Commission's part.  So, their selective-treatment claims—whether styled as equal protection or First Amendment claims—fail as a matter of law.

* * *

For these reasons, the Commission Members respectfully ask this Court to grant their motion to dismiss and dismiss Plaintiffs' complaint in its entirety.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*s/ Tiffany L. Carwile*
TIFFANY L. CARWILE (0082522)*
   *Counsel of Record
ANDREW FRASER (0097129)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Tiffany.Carwile@OhioAttorneyGeneral.gov
Andrew.Fraser@OhioAttorneyGeneral.gov

*Counsel for Defendant Commission Members*

### CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2019, the foregoing was filed with the Court.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance.  Parties may access this filing through the Court's system.

*s/ Tiffany L. Carwile*
TIFFANY L. CARWILE (0082522)
Assistant Attorney General