IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LIBERTARIAN PARTY OF OHIO, et al.,** : | |
| : | Case No. 2:19-cv-02501 |
| **Plaintiffs,** : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| v. : | |
| : | Magistrate Judge Jolson |
| **DEGEE WILHEM, et al.,** : | |
| : | |
| : | |
| **Defendants.** : | |

**OPINION & ORDER**

**I. INTRODUCTION**

Plaintiffs initiated this § 1983 civil action on June 15, 2019, alleging Defendants violated their First and Fourteenth Amendment Constitutional rights by excluding minority-party candidates from serving on the Ohio Elections Commission and by selectively not enforcing Ohio's ban on corporate campaign contributions.  (Doc. 1.)  This matter is now before the Court on Defendants' Motion to Dismiss.  (Doc. 7.)  The Motion is fully briefed, and the Court will decide the matter without oral argument.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion [#7].

**II. BACKGROUND**

On September 24, 2018, the Libertarian Party of Ohio and Harold Thomas ("Plaintiffs"), as Party Chair, filed complaints with Ohio's Elections Commission asserting that three organizations responsible for facilitating gubernational debates throughout Ohio in 2018 violated Ohio Revised Code § 3599.03, which governs corporate campaign contributions.  (Doc. 1 at 39-41.)  Plaintiffs claimed that these organizations, by staging an exclusive debate between the

1

Democratic and Republican gubernational candidates, and by not notifying or inviting Plaintiffs' gubernational candidate or employing objective criteria in selecting the debate participants, engaged in illegal corporate campaign contributions. (*Id.*) According to Plaintiffs, the Commission's legal counsel advised the Commission that the debates had been illegally coordinated, staged, planned, and sponsored under Ohio law, and recommended that the Commission find these organizations in violation of Ohio' campaign finance laws. (*Id.* at 41.) After holding a hearing on December 6, 2018, however, the Commission allegedly rejected its legal counsel's advice and dismissed Plaintiff's administrative complaints, finding no violation had occurred. (*Id.* at 42.)

On June 15, 2019, Plaintiffs sued the individual Commissioners on Ohio's Elections Commission ("Defendants") in their official capacity for violating Plaintiffs' First and Fourteenth Amendment rights. In Count One, Plaintiffs bring a First Amendment challenge to Ohio Revised Code § 3517.152, which restricts membership on Ohio's Elections Commission to affiliates of the two major political parties. In Counts Two and Three, Plaintiffs contend that Defendants violated the First Amendment and the Fourteenth Amendment's Equal Protection Clause by selectively not enforcing Ohio's campaign finance laws. Defendants have moved for the dismissal of Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1), (2), (5), and (6).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) provides for the dismissal of a complaint for, among other things, lack of subject-matter jurisdiction, lack of personal jurisdiction, insufficient service of process, and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (2), (5), and (6).

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for a failure to state a claim upon which relief can be granted, "[a]ll factual allegations in the complaint must be presumed true, and reasonable inferences must be made in favor of the non-moving party." *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664 (S.D. Ohio 2019) (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)). The Court, however, does not have to "accept unwarranted factual inferences." *Id.* (quoting *Total Benefits*, 552 F.3d at 434). A complaint "must state more than a bare assertion of legal conclusions to survive a motion to dismiss." *Id.* (internal quotations and citations omitted). Stated differently, "[a] plaintiff's [f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (internal quotations and citations omitted).

## IV. ANALYSIS

Defendants move for the dismissal of Plaintiffs' Complaint on three grounds. First, Defendants assert that the Court lacks personal jurisdiction over them because they were not properly served in accordance with Federal Rule of Civil Procedure 4. Second, Defendants assert that Plaintiffs lack standing to bring their claims under Counts Two and Three. Finally, Defendants assert that Plaintiffs fail to state a claim upon which relief can be granted under Counts One, Two, or Three. The Court will address each of Defendants' arguments, in turn, below.

**A. Whether Defendants were Properly Served Under Federal Rule of Civil Procedure 4**

Defendants argue that because Plaintiffs sued each individual member of Ohio's Elections Commission, they had to comply with Federal Rule of Civil Procure 4(e), which governs the service of individuals within a judicial district. Given that the Commissioners, or their respective agents, were not served individually, Defendants maintain that the Court lacks personal jurisdiction over them. Plaintiffs, on the other hand, argue that service was proper under Rule 4(j),

which pertains to the service of state governments. Because suing a state official in their official capacity is effectively a suit against the state, Plaintiffs contend that it was appropriate to serve their Complaint on the Ohio Attorney General. The Court agrees.

Both the United States Supreme Court and the Sixth Circuit have held that a suit against a public official in their official capacity is the equivalent of a suit against the state or government entity itself. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 72 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citations omitted); *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999) ("Suing a public official in his official capacity for acts performed within the scope of his authority is equivalent to suing the government entity."). Following this guidance, several district courts within this circuit have found that, for suits against authorities in their official capacities, service must be made pursuant to Federal Rule of Civil Procedure 4(j). *See, e.g.*, *Cleary v. City of Hudson, Ohio*, 2013 WL 5557394, at *2 (N.D. Ohio Oct. 7, 2013) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, service of a defendant sued in his official capacity must be made under Fed. R. Civ. P. 4(j).") (internal quotation and citations omitted); *Humes v. City of Blue Ash*, 2013 WL 5934429, at *2 (S.D. Ohio Oct. 31, 2013) ("Suing a public official in his official capacity for acts performed within the scope of his authority is equivalent to suing the government entity. Thus, service of a defendant sued in his official capacity must be made under Fed. R. Civ. P. 4(j).") (internal quotations and citations omitted); *see also Powers v. Collins*, 2010 WL 3526518, at *2 (S.D. Ohio Sept. 8, 2010) ("A suit against an official in his official capacity is not a suit against the official personally, for the real party in interest is the entity. Arguably, service on a defendant sued in his official capacity

must be made under Rule 4(j), because suing a state official in his official capacity is ultimately a suit against the state.") (internal quotations and citations omitted).  Other district courts outside of the Sixth Circuit have reached similar conclusions.  *See, e.g.*, *Paylan v. Bondi*, 2015 WL 12819148, at *1 (M.D. Fla. Nov. 9, 2015) ("On the other hand, suit against an individual acting in their official capacity requires service pursuant to Federal Rule of Civil Procedure 4(j)(2) since the suit is, in effect, against the city or municipality."); *Horton v. Maldonado*, 2014 WL 6629743, at *3 (N.D. Ga. Nov. 21, 2014) ("Officers sued in their official capacities must, under Federal Rule of Civil Procedure 4(j)(2), be served in the same manner as cities.").

Rule 4(j)(2) provides that a state subjected to a lawsuit must be served by: "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant."  Fed. R. Civ. P. 4(j)(2)(A)-(B).  In Ohio, service upon the state, or any one of its departments, offices, or institutions, can be completed by, among other ways, serving the state's attorney general.  Ohio R. Civ. P. 4.2(k).  Here, pursuant to Federal Rule of Civil Procedure 4(j) and Ohio Rule of Civil Procedure 4.2(k), Plaintiffs properly served their Complaint upon the Ohio Attorney General.

Nevertheless, Defendants, relying on the Sixth Circuit's opinion in *Amen v. Dearborn*, 532 F.2d 554 (6th Cir. 1976), maintain that public authorities, whether sued in their individual or official capacities, must be served personally pursuant to Federal Rule of Civil Procedure 4(e).  Defendants' reliance on *Amen*, however, is misplaced.  *See* 532 F.2d at 557.  In *Amen*, the Sixth Circuit held only that whether an authority was sued in their individual or official capacity, "proper service of process would still be necessary to obtain personal jurisdiction over those officials."  *Id.*  Nothing in that language, or anywhere in the Sixth Circuit's opinion, suggests that a complaint

5

filed against an authority in their official capacity must be served personally under Rule 4(e). Accordingly, the Court follows the direction of other district courts around the country and finds that Defendants were properly served pursuant to Rule 4(j). *See Cleary*, 2013 WL 5557394, at \*2; *Humes*, 2013 WL 5934429, at \*2; *Powers*, 2010 WL 3526518, at \*2; *Paylan*, 2015 WL 12819148, at \*1; *Horton*, 2014 WL 6629743, at \*3.

## B. Whether Plaintiffs have Standing to Bring their Selective Non-Enforcement Claims

Next, Defendants argue that Plaintiffs lack standing to bring their selective non-enforcement claims under Counts Two and Three of the Complaint.  The Court agrees.

To establish constitutional standing, Plaintiffs must show that: (1) they have suffered a concrete and particularized injury, whether actual or imminent; (2) the injury is traceable to some action or inaction of the Defendants; and (3) a favorable judgment would redress the injury. *Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d 602, 608 (6th Cir. 2008).  As a general rule, litigants lack standing to contest a government's decision not to pursue a criminal or civil action. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("The Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.").  The reason being that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id.*

Here, Plaintiffs assert that Defendants "selectively refused to enforce and/or apply Ohio's corporate aid restriction because of its political animus favoring the Democratic and Republican Parties in Ohio," in violation of both the First and Fourteenth Amendments to the Constitution. (Doc. 1 at 50-51.)  Critically, however, Plaintiffs have no cognizable interest in the enforcement of Ohio's campaign finance laws against another. *See Neroni v. Zayas*, 2014 WL 1311560, at \*5 (N.D.N.Y. Mar. 31, 2014) ("[A] private citizen lacks a judicially cognizable interest in the

6

prosecution or nonprosecution of another. Plaintiff therefore does not have standing to bring a claim challenging the selective non-enforcement of attorney disciplinary rules.") (internal citations omitted). Moreover, Plaintiffs do not allege that they were discriminated against -- a hallmark of the cases they present in support of their contention.[1] To the contrary, Plaintiffs concede that Defendants considered their administrative complaint, held a hearing, and issued a decision after listening to forty-five minutes of legal arguments from both sides. (*See* Doc. 1 at 42.). Plaintiffs' actual grievance, then, is with Defendants' ultimate finding. In the present context, where Plaintiffs simply wish to have another party civilly or criminally prosecuted, this is insufficient for purposes of constitutional standing. *See Linda R.S.*, 410 U.S. at 619 ("[A] private citizen lacks a

---

[1] *See, e.g.*, *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 197 n.3 (1989) ("The state may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000) ("We described the class of equal protection cases illustrated by Olech as vindictive action cases and said that they require proof that the cause of differential treatment of which plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant.") (internal quotations omitted); *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000) ("There is a constitutional right, however, to have police services administered in a nondiscriminatory manner—a right that is violated when a state actor denies such protection to disfavored persons."); *Elliot-Park v. Manglona*, 592 F.3d 1003, 1006 (9th Cir. 2010) ("But Elliot's equal protection claim isn't based on some general constitutional right to have an assailant arrested. Rather, she argues Babauta was given a pass by the police because of the officers' alleged racial bias not only in favor of Babauta as Micronesian, but also against her as a Korean."); *Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 694 (10th Cir. 1988) ("In this case, Nancy Watson has alleged that the defendants' custom and policy of not providing assistance to victims of abuse by spouses in the same manner as other victims of assault deprived her of the equal protection of laws guaranteed by the fourteenth amendment."); *Mody v. City of Hoboken*, 959 F.2d 461, 465 (3d. Cir. 1992) ("Mody . . . contends that the defendants are liable because their failure to provide adequate police protection was substantially motivated by a racially discriminatory mind set against Asian Indians."); *Burnett v. Springfield Twp.*, 2014 WL 3109963, at *4 (E.D. Pa. July 8, 2014) ("The relevant injury must have been, instead, the alleged unequal treatment that rendered police protection less available to disfavored class members than to others."); *Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 889 (7th Cir. 2012) ("This opinion, expressing the views of four judges, proposes a simple standard: that the plaintiff be required to show that he was the victim of discrimination intentionally visited on him by state actors who knew or should have known that they had no justification, based on their public duties, for singling him out for unfavorable treatment—who acted in other words for personal reasons, with discriminatory intent and effect.").

judicially cognizable interest in the prosecution or nonprosecution of another."); *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1998) ("[C]ounsel suggested that Sattler had an enforceable right as a member of the public at large and as a victim to have defendants criminally prosecuted. He further urged that such a right was protected by the equal protection clause of the fourteenth amendment. There is, of course, no such constitutional right . . . ."). If the Court were to recognize such standing, any person who has their complaint dismissed by the Commission would then be able to file a § 1983 action in federal court, as opposed to following Ohio's administrative procedures for seeking review in the state court of common pleas. *See* O.R.C. § 2506.01(A) ("[E]very final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505 of the Revised Code.").

Additionally, Plaintiffs' Complaint is devoid of any allegations that Defendants enforced, or threatened to enforce, Ohio's campaign finance laws against them, while not enforcing the law against the two major political parties. *See Lash v. City of Union, Ohio*, 1999 WL 33127974, at *7 (S.D. Ohio Sept. 27, 1999) ("Simply stated, the Plaintiffs, by failing to allege or to present evidence that the Defendants have selectively enforced the sign ordinances against them, have not demonstrated that they suffered an injury in fact, as a result of the Defendants' alleged actions in that regard."). Hence, Plaintiffs have not demonstrated that they suffered a particularized and concrete injury at the hands of Defendants.

Still, Plaintiffs, relying primarily on the District Court for the District of Columbia's decision in *La Botz v. Federal Election Commission*, 889 F. Supp. 2d 51 (D.D.C. 2012), argue that standing exists where an agency fails to enforce the laws it was designed to implement. *La Botz*,

8

however, is inapposite. There, the plaintiff was petitioning for review of the Federal Election Commission's ("FEC") decision dismissing his Federal Election Campaign Act complaint. *La Botz*, 889 F. Supp. 2d at 54. But unlike here, federal law specifically provides that a person aggrieved by an order of the FEC can file a petition for review with the federal district court. *See* 52 U.S.C. § 30109(a)(8)(A) ("Any party aggrieved by an order of the Commission dismissing a complaint filed by such party under paragraph (1) . . . may file a petition with the United States District Court for the District of Columbia."). No such right exists under Ohio law or § 1983 as it relates to the decisions of the Ohio Elections Commission. Rather, the appropriate venue for Plaintiffs to seek review is the state court of common pleas, where they currently have an action pending. In short, because Plaintiffs lack standing to bring their selective non-enforcement claims in federal court under §1983, the Court **GRANTS** Defendants' Motion to Dismiss Counts Two and Three of the Complaint.

### C. Whether Plaintiffs State a Claim Under Count One of the Complaint

Finally, Defendants argue that Plaintiffs fail to state a cognizable claim under Count One of the Complaint, which alleges that limiting membership on Ohio's Elections Commission to affiliates of the two major political parties violates the First Amendment. The Court disagrees.

Ohio Revised Code § 3517.152 governs the appointment of officials to the seven-member Ohio Elections Commission. *See* O.R.C. § 3517.152. That statute in relevant part, provides:

> [T]he speaker of the house of representatives and the leader in the senate of the political party of which the speaker is a member shall jointly submit to the governor a list of five persons who are affiliated with that political party. . . . [T]he two legislative leaders in the two houses of the general assembly of the major political party of which the speaker is not a member shall jointly submit to the governor a list of five persons who are affiliated with the major political party of which the speaker is not a member. . . . [T]he governor shall appoint three persons from each list to the commission.
>
> [A]fter the governor appoints these six members, they shall, by a majority vote, appoint to the commission a seventh member, who shall not be affiliated with a political party.

O.R.C. §3517.152(a)(1).  In practice, O.R.C. § 3517.152 prohibits any person affiliated with a minor political group, such as Ohio's Libertarian Party, from being considered for membership on the Commission.

Defendants argue that Ohio has a vital interest in maintaining the integrity of its elections and that the Commission's bipartisan membership allows it to perform its role effectively and impartially.  They point to several cases standing for the proposition that party affiliation is an acceptable requirement for certain types of government employment.  *See Branti v. Finkel*, 445 U.S. 507, 517 (1980) ("[P]arty affiliation may be an acceptable requirement for some types of government employment.").

For example, in *Branti*, the United States Supreme Court held that "if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency."  *Id.*  The Court went on to instruct that the ultimate inquiry "is whether the hiring authority can demonstrate that a party affiliation is an appropriate requirement for the effective performance of the public office involved."  *Id.* at 518.

In *McCloud v. Testa*, the Sixth Circuit identified specific categories of positions where it is acceptable to consider party affiliation.  97 F.3d 1536, 1557 (6th Cir. 1996).  Relevant here, the court identified the following category:

> **Category Four:** positions that are part of a group of positions filled by balancing out the political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*Id.*  The court then provided the following example to illustrate this category:

> **Category Four:** a gubernationally-appointed Democratic economist placed on a revenue forecasting committee consisting by law of two economists (one Republican and one Democrat) chosen by the state legislature, two economists of similar party affiliation

10

>chosen by the governor, and one economist of any party chosen by the president of the state's most prominent university.

*Id.* Defendants argue that Ohio's Election Commission falls within category four's exception because, given its role in monitoring election-related conduct, balancing out representation from the two most prominent political parties is vital to ensuring that the Commission remains neutral. (*See* Doc. 7 at 17.)

Plaintiffs challenge this notion and point to the Third Circuit's decision in *Adams v. Governor of Delaware*, 922 F.3d 166 (3d Cir. 2019), for support. There, the court struck down a Delaware law requiring judges appointed to the state courts to be members of the Democratic or Republican parties. *Id.* at 183. In doing so, the Third Circuit emphasized that even assuming Delaware had a "vital state interest" in a politically balanced judiciary, its practice of excluding independents and third-party voters from judicial employment was not narrowly tailored to that interest. *Id.* at 182. The court also suggested that partisan balance concerns are less compelling with respect to judges, who are not elected or appointed to represent a particular viewpoint, but instead are required to exercise their independent authority to make decisions that uphold and apply the law fairly and impartially. *See id.* at 182-83 (discussing *Common Cause Indiana v. Individual Members of the Indiana Election Commission*, 800 F.3d 913 (7th Cir. 2015)).

Here, the Court finds that Plaintiffs' First Amendment challenge to O.R.C. §3517.152 is not foreclosed by precedent. Although the Sixth Circuit has held that political patronage can be considered for positions that are part of a group of positions filled by balancing out political representation, the court did not contemplate a statute such as O.R.C. § 3517.152 that makes affiliation with a minor political party a disqualifying factor. *See McCloud*, 97 F.3d at 1557. Indeed, the Sixth Circuit noted that its category-four exclusion was formulated only to accommodate the example given in *Branti*, where the Supreme Court implied that state election

laws could permissibly require that a voting precinct be supervised by election judges of different political parties. *Id.* at 1557 n.33 (citing *Branti*, 445 U.S. at 518 ("Under some circumstances, a position may be appropriately considered political even though it is neither confidential nor policymaking in character. As one obvious example, if a State's election laws require that precincts be supervised by two election judges of different parties, a Republican judge could legitimately be discharged solely for changing his party registration.")). Nowhere in *Branti* or *McCloud* was there approval of statutes that, like O.R.C. § 3517.152, reach beyond establishing political balance. *See* 445 U.S. at 518; 97 F.3d at 1557.

Furthermore, O.R.C. § 3517.152 is comparable to the statute at issue in *Adams*, which categorically excluded affiliates of a minority party from becoming judges in Delaware. And, the role of Ohio's Elections Commission, in many ways, resembles that of a judge adjudicating a case. *See* 922 F.3d at 183. For instance, the Commission is authorized to find violations of Ohio's campaign finance laws, assess fines, and refer violations to the local prosecutor. *See* O.A.C. §§ 3517-1-14(B)(3) and (C). These decisions, in theory, should not bear on political affiliation; rather, they should be objective determinations based on the law. It is difficult to ascertain why an individual who is affiliated with a minor political party cannot effectively perform this function, or even be considered for a position on the Commission. *Branti*, 445 U.S. at 518 (holding the ultimate inquiry "is whether the hiring authority can demonstrate that a party affiliation is an appropriate requirement for the effective performance of the public office involved").

To be clear, the Court recognizes that the state of Ohio has an interest in the adjudication of its election laws and the appearance of neutrality on its Elections Commission. But to justify the strict construct of O.R.C. § 3517.12, Defendants must demonstrate that this interest is compelling and that the statute is narrowly tailored to achieve that interest. *See Adams*, 922 F.3d

at 183 ("To justify a rule that impinges an employee's First Amendment association rights, the state must show both that the rule promotes 'a vital state interest' and that the rule is 'narrowly tailored' to that interest."). At this juncture, the Court expresses no opinion as to whether Defendants can satisfy this burden. It is enough to conclude that Plaintiffs have stated a claim upon which relief can be granted. For this reason, Defendants' Motion to Dismiss Count One of the Complaint is **DENIED**.

## V. CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss [#7]. Counts Two and Three of the Complaint are hereby **DISMISSED**.

In addition, Plaintiffs filed an Objection to Magistrate Judge Jolson's October 3, 2019 Opinion and Order, which stayed discovery until the resolution of Defendants' Motion to Dismiss. (Doc. 28.) Because the Court has now resolved the Motion to Dismiss, Plaintiffs' Objection [#28] is **OVERRULED** as **MOOT**.

**IT IS SO ORDERED.**

                                      **/s/ Algenon L. Marbley**
                                      **ALGENON L. MARBLEY**
                                      **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: October 22, 2019**