# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **LIBERTARIAN PARTY OF OHIO, et al.,** : | |
| : | Case No. 2:19-cv-02501 |
| **Plaintiffs,** : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Jolson |
| **DEGEE WILHEM, et al.,** : | |
| : | |
| : | |
| **Defendants.** : | |

## **OPINION & ORDER**

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for a Preliminary Injunction. (Doc. 37.) The hearing on this Motion was held on Monday, November 25, 2019 at 9:30 a.m. For the reasons set forth below, the Court **DENIES** Plaintiffs' Motion for a Preliminary Injunction [#37].

## II. BACKGROUND

On September 24, 2018, the Libertarian Party of Ohio and Harold Thomas ("Plaintiffs"), as Party Chair, filed complaints with Ohio's Elections Commission asserting that three organizations responsible for facilitating gubernational debates throughout Ohio in 2018 violated Ohio Revised Code § 3599.03, which governs corporate campaign contributions. (Doc. 1 at 39-41.) Plaintiffs claimed that these organizations, by staging an exclusive debate between the Democratic and Republican gubernational candidates, and by not notifying or inviting Plaintiffs' gubernational candidate or employing objective criteria in selecting the debate participants, engaged in illegal corporate campaign contributions. (*Id.*) According to Plaintiffs, the Commission's legal counsel advised the Commission that the debates had been illegally

1

coordinated, staged, planned, and sponsored under Ohio law, and recommended that the Commission find these organizations in violation of the state's campaign finance laws. (*Id.* at 41.) At the Preliminary Injunction hearing, Philip Richter, legal counsel to the Commission, denied that he ever made this recommendation. To the contrary, he testified that he recommended that the Commission find no violation. In any case, on December 6, 2018, the Commission dismissed Plaintiffs' administrative complaints, finding no violation had occurred. (*Id.* at 42.)

On June 15, 2019, Plaintiffs sued the individual Commissioners on Ohio's Elections Commission ("Defendants") in their official capacity for violating Plaintiffs' First and Fourteenth Amendment rights. In Count One, Plaintiffs brought a First Amendment challenge to Ohio Revised Code § 3517.152, which restricts membership on Ohio's Elections Commission to affiliates of the two major political parties. In Counts Two and Three, Plaintiffs alleged Defendants violated their First and Fourteenth Amendment rights by selectively choosing not to enforce Ohio's campaign finance laws and by dismissing their administrative complaints. The Court, however, dismissed Counts Two and Three after finding Plaintiffs lacked standing to assert those claims. (*See* Doc. 29.)

Plaintiffs have now filed a Motion for a Preliminary Injunction asking the Court to do the following: (1) declare that O.R.C. § 3517.152 violates the First Amendment; (2) prohibit the state of Ohio from enforcing O.R.C. § 3517.152; (3) direct Defendants to vacate their prior dismissal of Plaintiffs' administrative complaints; (4) direct Defendants to refer Plaintiffs' administrative complaints to a neutral decision-maker; (5) enjoin Defendants, as currently constructed, from considering administrative complaints brought against or on behalf of minor political candidates; and (6) direct Defendants, as currently constructed, to refer administrative complaints brought against or on behalf of minor political parties or their candidates to neutral decision-makers.

## III. STANDARD OF REVIEW

Preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Whether to grant such relief is a matter within the discretion of the district court. *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166-67 (6th Cir. 1989). Courts consider four factors when determining whether to grant a request for a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001).

## IV. ANALYSIS

### 1. Likelihood of Success on the Merits

The first preliminary injunction factor requires the Court to consider Plaintiffs' likelihood of success on the merits of their claim. Here, whether Plaintiffs are entitled to the relief that they request boils down to a single legal question: Does O.R.C. § 3517.152, which restricts membership on Ohio's Elections Commission to affiliates of the two major political parties, violate the First and Fourteenth Amendments? Plaintiffs' core argument is that members of the Libertarian Party have a constitutional right to be considered for representation on Ohio's Elections Commission to ensure that the state's election laws are fairly regulated.

Previously, this Court, relying primarily on the Third Circuit's opinion in *Adams v. Governor of Delaware*, 922 F.3d 166 (3d Cir. 2019), suggested that to justify the strict construction of O.R.C. § 3517.152, Defendants needed to demonstrate that the statute was narrowly tailored to

achieve a compelling state interest. (*See* Doc. 29 at 12-13.) Defendants now cite additional case law and raise new arguments in an effort to distinguish *Adams* and to establish that rational basis review is the appropriate standard to apply. Alternatively, Defendants contend that even if strict scrutiny review were to apply, O.R.C. § 3517.152 is narrowly tailored to further Ohio's interest in the integrity of its elections, in preventing corruption in the political process, and in the stability of its political systems.

A. <u>Rational Basis Review or Strict Scrutiny</u>

A threshold question for the Court is whether O.R.C. § 3517.152 must withstand rational basis review or strict scrutiny. The Supreme Court has adopted a flexible framework for testing the validity of state election regulations. *See Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 (1983). Under this framework, the level of scrutiny to be applied corresponds with the degree to which a challenged regulation burdens First and Fourteenth Amendment rights. *See id.* Hence, the Court "must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" and then "evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson*, 460 U.S. at 789. The Supreme Court simplified this inquiry in *Burdick*:

> Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance. But when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions.

504 U.S. at 434 (internal quotations and citations omitted).

4

Ohio Revised Code § 3517.152 governs the appointment of officials to the seven-member Ohio Elections Commission. *See* O.R.C. § 3517.152. This statute, in relevant part, provides:

> [T]he speaker of the house of representatives and the leader in the senate of the political party of which the speaker is a member shall jointly submit to the governor a list of five persons who are affiliated with that political party. . . . [T]he two legislative leaders in the two houses of the general assembly of the major political party of which the speaker is not a member shall jointly submit to the governor a list of five persons who are affiliated with the major political party of which the speaker is not a member. . . . [T]he governor shall appoint three persons from each list to the commission.
>
> [A]fter the governor appoints these six members, they shall, by a majority vote, appoint to the commission a seventh member, who shall not be affiliated with a political party.

O.R.C. § 3517.152(a)(1). While in practice, O.R.C. § 3517.152 effectively prohibits any person affiliated with a minor political party, such as Ohio's Libertarian Party, from being considered for membership on the Commission, the statute does not foreclose the possibility that a minor political party could one day become a major political party and, in turn, have an affiliated member appointed to the Commission. Defendants key in on this possibility to argue that because appointment to Ohio's Elections Commission is limited by party size -- and not to any specific party -- the restrictions set forth in O.R.C. § 3517.152 are nondiscriminatory, and therefore, subject only to rational basis review.

Defendants rely on the First Circuit's opinion in *Werme v. Merrill* for support. 84 F.3d 479, 484-85 (1st Cir. 1996). There, the Libertarian Party of New Hampshire challenged whether it was unconstitutional for a state law to permit the two most popular political parties to have election inspectors and ballot clerks present at the polls on election day, while denying minor political parties this same right. *Id.* at 481. Like here, the plaintiffs argued that this deprived them of their right to free political association and discriminated against them on the basis of their political affiliation. *Id.* at 484. In rejecting plaintiffs' claims, however, the First Circuit noted that the challenged statute only posed a slight burden on the rights of Libertarians, and thus, was subject

5

to rational basis review. *Id.* First, the court made clear that there was no abstract constitutional right to be appointed to serve as an election inspector or ballot clerk. *Id.* And, although the right to vote included the right to have one's vote counted, nothing on the face of the New Hampshire statutes deprived Libertarian Party members of that right. *Id.* Second, the court concluded that New Hampshire's regulations were nondiscriminatory in that they did not differentiate among Republicans, Democrats, and Libertarians. *Id.* Rather, the regulations conditioned the right to appoint election inspectors and ballot clerks on a certain degree of success at the polls, which was not discriminatory *per se*. *Id.* (citing *American Party of Texas v. White*, 415 U.S. 767, 781 (1974)). Stated differently, the Libertarian Party had the same opportunity to qualify as a source of election inspectors and ballot clerks under New Hampshire law as did any other party. *Id.* at 484-85.

Defendants also cite to the Northern District of Ohio's decision in *Pirincin v. Board of Elections of Cuyahoga County*. 368 F. Supp. 64, 69-71 (N.D. Ohio 1973). In *Pirincin*, the plaintiffs, all of whom were either independent voters or members of minor political parties, challenged the constitutionality of the way in which Ohio board of election members were selected under O.R.C. §§ 3501.06 and 3501.07. *Id.* at 66. Those statutes created a scheme whereby the Ohio secretary of state was required to "appoint one board member from the party which cast the highest number of votes for governor at the last preceding regular state election and the other from the party that cast the next highest number of votes for governor at the same election." *Id.* at 67. Vacancies for unexpired terms and all appointments to new terms, in turn, were "filled from the party to which the departing member belong[ed] unless there was a third party that cast a greater number of votes at the last preceding regular election for governor than did the party to which the retiring member belong[ed]." Consequently, these statutes, like O.R.C. § 3517.152, effectively

6

limited representation on Ohio's elections boards to members of the Democratic and Republican parties.

In that case, the plaintiffs argued that this scheme violated their First and Fourteenth Amendment rights, as it fenced them out of "a vital part of the election process." *Id.* at 68. Additionally, plaintiffs alleged that the interests of a two-party board may, at times, coincide to the detriment of independent voters and members of minority parties, thereby depriving them of due process under the law. *Id.* 77. The court disagreed with both arguments. First, like in *Werme*, the court stressed that the opportunity to have a representative on the board of electors was equally available to all political parties based on the voter support received during the preceding state gubernational election. *Id.* at 71-72. Second, with respect to plaintiffs' due process argument, the court held that plaintiffs "assume[d] too much" and that the procedures currently in place had worked reasonably well to ensure honest and fair elections. *Id.* at 79. Moreover, the court found that because the elections boards' decisions were subject to judicial review, this provided further protection to alleviate any due process concerns. *See id.*

Plaintiffs do little to address or distinguish either *Werme* or *Pirincin*; rather, Plaintiffs rely primarily on the Third Circuit's opinion in *Adams*, where the court struck down a Delaware statute that limited service on its courts to members of the two major parties. 922 F.3d 166. There, the plaintiff was an independent, unaffiliated voter and a member of the state bar who sought a judicial appointment but was prevented from applying for one because he was not a member of a major political party. *Id.* at 172. He thus brought a challenge to the statute, arguing that it impinged on his First Amendment right to associate with the political party of his choice. *Id.* at 183. The Third Circuit agreed and held that Delaware's practice of excluding independents and third-party voters from judicial employment was not narrowly tailored to advance the state's interest in a politically

7

balanced judiciary. *Id.* at 182. In doing so, the court reasoned that judges were not policymakers such that judicial appointments would fall within the political patronage exception recognized by the Supreme Court. *Id.* at 181 ("We therefore conclude that state judges do not fall within the policymaking exception because affiliation with a particular party is not a requirement for the effective performance of the judicial role."); *but see Newman v. Voinovich*, 986 F.2d 159, 163 (6th Cir. 1993) ("[W]e hold that judges are policymakers within the meaning of *Elrod* and *Branti*."). Further, the court maintained that the rationale for seeking political balance on multimember deliberative bodies, such as Ohio's Elections Commission, did not extend to Delaware judges, many of whom sit alone. *Id.* at 182.

After reviewing the cases cited above and the arguments set forth in the parties' briefs, this Court is now persuaded that *Adams* is distinguishable, and that the appropriate standard to apply to O.R.C. § 3517.152 is rational basis review. As a threshold matter, the Sixth Circuit, unlike the Third Circuit, recognizes that judges are policymakers falling within the Supreme Court's political patronage exception. *See Newman*, 986 F.2d at 163 ("[W]e hold that judges are policymakers within the meaning of *Elrod* and *Branti*."). This is an important distinction because Ohio's Elections Commission, like judges, acts in a quasi-judicial capacity. Indeed, the Commission is authorized to find violations of Ohio's campaign finance laws, assess fines, and refer violations to the local prosecutor. *See* O.A.C. §§ 3517-1-14-(B)(3) and (C). The Commission also has explicit policy-making functions, such as the ability to recommend legislation and issue advisory opinions. *See* O.R.C. § 3517.153(D). At least within the Sixth Circuit then, that O.R.C. § 3517.152 implicates First and Fourteenth Amendment rights does not automatically trigger strict scrutiny review. Moreover, the Sixth Circuit has held that political patronage can be considered for

8

positions that are part of a group of positions filled by balancing out political representation. *See McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996).

Additionally, the Court finds the decisions in *Werme* and *Pirincin* persuasive in concluding that O.R.C. § 3517.152 is not discriminatory towards minor political parties. The statute does not differentiate between Democrats, Republicans, Libertarians, or other minority parties. To the contrary, it conditions the right to have affiliated party members appointed to the Elections Commission on a certain degree of success at the polls. Thus, the Libertarian Party has the same opportunity to qualify for appointments to the Elections Commission as any other political party. *See Werme*, 84 F.3d at 484-85 ("Equality of opportunity exists, and equality of opportunity—not equality of outcomes—is the linchpin of what the Constitution requires in this type of situation."). It follows, Plaintiffs eligibility for membership on Ohio's Elections Commission depends upon its ability to garner the necessary voter support.

Finally, to the extent Plaintiffs allege that the procedure for selecting Elections Commission members creates a divided loyalty which in turn deprives them of their fundamental due process rights, Plaintiffs fail to demonstrate that the Commission lacks adequate safeguards to protect these rights. *See Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."). Here, Plaintiffs concede that Defendants considered their administrative complaint, held a hearing, and issued a decision after listening to forty-five minutes of legal arguments from both sides. (*See* Doc. 1 at 42.). If Plaintiffs disagreed with the Commissions' decision to dismiss their administrative complaints, they could, as they did, seek judicial review in the Ohio Court of Common Pleas. *See* O.R.C. § 2506.01(A) ("[E]very final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court

of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505 of the Revised Code."). Hence, the makeup of Ohio's Elections Commission does not, in and of itself, burden Plaintiffs' fundamental due process rights. *See Pirincin*, 368 F. Supp. at 79 ("[S]ince the court in the instant case has determined that the board of representation does not deprive plaintiffs of due process of law, the availability of judicial review represents a protection that further enhances the constitutionality of the challenged statutory requirements.").

In short, the Court finds that O.R.C. § 3517.152 is not discriminatory towards minority political parties and does not constrain fundamental constitutional rights. Instead, the statute poses reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters. Accordingly, the appropriate level of scrutiny to apply to O.R.C. § 3517.152 is rational basis review. *See Burdick*, 504 U.S. at 433 ("Election laws will invariably impose some burden upon individual voters . . . . Consequently, to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest, as petitioner suggests, would tie the hands of States seeking to assure that elections are operated equitably and efficiently.").

B. Whether O.R.C. § 3517.152 is Rationally Related to an Important Government Interest

Having determined that O.R.C. § 3517.152 is subject to rational basis review, the next question for the Court is whether this statute is reasonably related to the advancement of an important regulatory interest. *See Burdick*, 504 U.S. at 434 ("[W]hen a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions.") (internal quotations omitted).

Here, the state of Ohio has an interest in ensuring that political balance on its Elections Commission protects the fairness of the deliberative party process and that judicial and policy-making decisions are well rounded and diversified. (*See* Plaintiffs' Motion for Preliminary Injunction, Doc. 37 at 16 ("Plaintiffs concede that Ohio, like Delaware, has a legitimate interest in political balance in the context of investigating and adjudicating election disputes.").) Requiring bipartisanship on an Elections Commission is universally regarded as an effective means of preventing fraud and ensuring honest elections. *See Vinston v. Anton*, 786 F.2d 1023, 1025 (11th Cir. 1996) ("Appellants admit that Alabama constitutionally may, as all States do, so far as we are aware, follow the practice of requiring bipartisanship in the composition of election boards. Such adversary partisan confrontation is universally regarded as an effective means of preventing fraud and ensuring honest elections."). And, political balance achieves fairness, consistency, and objectivity. *See Gill v. State of Rhode Island*, 933 F. Supp. 151, 156 (D.R.I. 1996) ("The provisions ensure fairness by providing for a bipartisan board.").

Additionally, O.R.C. § 3517.152 undoubtedly advances the state's important interests. Indeed, the statute implements a checks and balances system between the state's two major political parties, while providing minority parties with the same opportunity to be represented on the Commission should they garner the necessary voter support. For these reasons, the Court finds that O.R.C. § 3517.152 is rationally related to Ohio's interest in achieving political balance on its Elections Commission, and thus, Plaintiffs have failed to demonstrate a likelihood of success on the merits of their claim. *See Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal.").

## 2. Irreparable Harm

The second preliminary injunction factor requires the Court to consider whether Plaintiffs face irreparable harm absent injunctive relief. Here, Plaintiffs argue that the institutional bias of Ohio's Elections Commission threatens all facets of the 2020 election, as its authority touches all aspects of the electoral process. But as discussed at length above, Plaintiffs fail to demonstrate that the Elections Commission, as constructed under O.R.C. § 3517.152, is unconstitutional. Accordingly, Plaintiffs have not shown that they face irreparable harm absent injunctive relief.

## 3. Harm to Others

The third preliminary injunction factor requires the Court to consider whether issuing an injunction would cause substantial harm to others. Here, issuing an injunction that dismantles Ohio's Elections Commission would leave the state of Ohio, and the public, without a mechanism to ensure compliance with its campaign finance laws. This factor will, therefore, weigh against injunctive relief.

## 4. Public Interest

The final preliminary injunction factor requires the Court to consider whether the public interest would be served by the issuance of an injunction. Here, the Court finds no public interest that would be served by preventing a constitutionally-constructed Elections Commission, that has existed in its current form for over twenty years, from operating in the state of Ohio.

In sum, all four preliminary injunction factors weigh against injunctive relief. Accordingly, the Court **DENIES** Plaintiffs' Motion for a Preliminary Injunction.

## V. CONCLUSION

For the reasons stated herein, the Court **DENIES** Plaintiffs' Motion for a Preliminary Injunction [#37]. Furthermore, considering that the remaining claim in Plaintiffs' Motion for

Summary Judgement turns on the same legal question presented here, and because the Court found that Plaintiffs did not have a likelihood of success on the merits of that claim, the Court also **DENIES** Plaintiffs' First and Second Motions for Summary Judgment [#6 & # 47].

    **IT IS SO ORDERED.**

                                    /s/ Algenon L. Marbley_____
                                    **ALGENON L. MARBLEY**
                                    **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: January 13, 2020**